1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

INSOMNIAC HOLDINGS, LLC, a Delaware
limited liability company,

                Plaintiff,

     v.

CONSCIOUS ENTERTAINMENT GROUP,
LLC d/b/a USC Events, a Washington limited
liability company, and CHAD ANDERSON, an
individual,

                Defendant.

No. 2:20-cv-00137

COMPLAINT

**JURY DEMAND**

     Plaintiff Insomniac Holdings, LLC ("Insomniac") brings this action against Defendants

Conscious Entertainment Group, LLC d/b/a USC Events ("USC") and Chad Anderson

("Anderson"), alleging as follows:

## I.     INTRODUCTION

     1.     This is an action to judicially confirm that Insomniac and USC are no longer co-

producing Paradiso Festival, an annual two-day electronic dance music event held at the Gorge

Amphitheatre in Quincy, Washington, because the parties' co-promotion agreement was

properly terminated due to USC and Anderson's fraudulent activity of misusing funds taken

COMPLAINT  (CASE NO. 2:20-cv-00137) - 1
4829-3781-6752v.19 0107297-000007

from Insomniac and being unable to account for such funds.  USC cannot be permitted to promote the Paradiso Festival 2020 or continue to use its name or trademark.

2.      Plaintiff Insomniac and Defendant USC are music event promoters who jointly produced Paradiso Festival every year pursuant to a Co-Promotion Agreement (the "Agreement").  Due to USC's breach of the Agreement, the Agreement was terminated.  Insomniac will not renew the Agreement for 2020.

3.      Insomniac and USC shared equally the net revenue and losses from Paradiso Festival.  Under the Agreement, USC was responsible for managing and paying most artists and vendors for Paradiso Festival.  However, USC could request funds advanced on unearned revenue from Insomniac to ensure USC had enough cash flow to pay mutually agreed costs, such as event deposits, to USC's artists and vendors before the event.

4.      In 2019, Paradiso Festival was held at the Gorge Amphitheatre on June 14 and 15, 2019 (the "2019 Event").  In the months leading up to the 2019 Event, USC submitted four detailed funding requests to Insomniac so that USC could pay mutually agreed costs before the event.  Insomniac carefully reviewed each request and ultimately advanced over $2 million to USC for the sole purpose of making specific payments to specific artists and vendors before the 2019 Event, as identified in USC's funding requests to Insomniac.

5.      Despite USC's representations and obligations to Insomniac, USC did not use the advanced funds for their agreed-upon purpose and did not pay its artists and vendors.  As a result, USC's artists and vendors began contacting Insomniac to seek payment for the 2019 Event.  Even though Insomniac already funded the payments for many of these artists and vendors by advancing funds to USC, and even though it was USC's responsibility to pay them, Insomniac was forced to pay an additional $1.2 million directly to USC's artists and vendors in order to protect the Paradiso Festival brand and maintain Insomniac's business relationships and reputation, as these artists and vendors often perform at and support Insomniac's other music events.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

6.      Under the Agreement, Insomniac and USC were required to settle the 2019 Event no later than 30 days after the event.  Further, Insomniac and USC were required to provide each other with financial information necessary for settlement within 30 days.

7.      Despite Insomniac's repeated requests and USC's accounting obligations under the Agreement, USC refused to provide financial documents that would show how USC actually used the advanced funds.  As a result, Insomniac was unable to settle the 2019 Event and ensure that all artists and vendors were fully paid.

8.      Insomniac notified USC in writing that USC was in material breach of the Agreement due to USC's failure to comply with its accounting obligations.  After USC failed to cure the breach, Insomniac notified USC in writing that the Agreement was terminated.

9.      After termination, Insomniac continued to seek financial information from USC for the limited purpose of settling expenses and revenues for the 2019 Event.  Insomniac was eventually forced to settle the 2019 Event without all of the financial information that would be necessary, and that was required under the Agreement, for a complete and accurate settlement. As part of the settlement, USC agreed to pay all unpaid vendors in full for the 2019 Event and to send payment confirmation to Insomniac by January 18, 2020.

10.     Several vendors have notified Insomniac that they have still not been paid for the 2019 Event.  USC has not submitted payment confirmation to Insomniac.  On information and belief, USC has still not fully paid all of the USC vendors for the 2019 Event.

11.     On information and belief, USC has begun promoting and booking talent for Paradiso Festival 2020 even though the Agreement was terminated.

12.     USC's harmful acts and omissions have damaged the Paradiso Festival brand and Insomniac's business and reputation, and Insomniac no longer wishes, and is no longer contractually obligated, to produce Paradiso Festival with USC.  Insomniac now seeks, in this lawsuit, assurance that all artists and vendors have been fully paid for the 2019 Event, a declaration that the Agreement has been terminated, and money damages.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

## II.     PARTIES

13.     Plaintiff Insomniac is a Delaware limited liability company with its principal place of business in Beverly Hills, California.  Insomniac is a music event promoter that regularly promotes electronic music events around the country.  Insomniac is an affiliate of House of Blues Concerts, Inc., a California corporation ("HOB").  For purposes of diversity, Insomniac's LLC members are citizens of Delaware, Nevada, and/or California.

14.     On information and belief, Defendant USC is a Washington limited liability company with its principal place of business in Seattle, King County, Washington.

15.     On information and belief, Defendant Chad Anderson is a citizen of Washington State who resides in Snohomish County, Washington.  Mr. Anderson is the Founder and CEO of USC.  On information and belief, Mr. Anderson is the only LLC member of USC.

## III.     JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because this is a civil action between citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

17.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) because Defendants reside in this District.

18.     This Court has the authority to determine the parties' respective rights and other legal obligations pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.  The dispute between the parties with respect to the termination status of the Agreement creates a justiciable controversy.

## IV.     FACTS

### A.     Co-Promotion Agreement

19.     Since 2012, electronic dance music fans have flocked to the Gorge Amphitheatre every summer to attend Paradiso Festival.  This weekend-long music event features nationally and internationally known electronic dance music artists, with headliners such as Kaskade, Porter Robinson, Tiesto, Bassnectar, Above & Beyond, Zedd, Krewella,

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

Skrillex, and Armin Van Buuren.  Paradiso Festival attracts over 25,000 attendees per day every year.

20.     On March 19, 2013, HOB and USC entered into the Agreement for the purpose of promoting and conducting the 2013 Paradiso Festival.  In addition to operating as a co-promotion agreement, the Agreement operated as the venue agreement that allowed Paradiso Festival to be held at the Gorge Amphitheatre.

21.     On or around May 1, 2013, HOB assigned the Agreement to Insomniac pursuant to Section 10(b) of the Agreement.  A copy of the Agreement is attached as **Exhibit A** and incorporated by reference herein.

22.     The Agreement was automatically renewed on an annual basis, with Paradiso Festival to be held at the Gorge Amphitheatre for the last full weekend in June or other mutually agreed weekend.  The 2019 Event was produced under automatic renewal of the Agreement.

23.     Either Insomniac or USC could terminate the Agreement based on the other party's breach.  The party had the right to terminate the Agreement if the other party failed to perform any obligation under the Agreement, received written notice of its failure to perform, and did not cure its failure within 10 days following the notice.

24.     The Agreement set out each promoter's responsibilities for producing Paradiso Festival.  Insomniac's responsibilities included ticketing; food, beverage, and alcohol concessions; venue operations; and permits.  USC's responsibilities included artist relations and talent management; audio, lighting, and visual production; merchandise vending; attractions; and all other entertainment-related elements of the event.

25.     The Agreement sets out a cross-license provision that survives termination of the Agreement.  Insomniac and USC share ownership of the Paradiso Festival trademark and grant each another a cross-license to use the trademark for the Event.  Further, neither party is allowed to use the Paradiso Festival trademark in conjunction with any other event without the other party's advance written consent.

COMPLAINT  (CASE NO. 2:20-cv-00137) - 5
4829-3781-6752v.19 0107297-000007

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

**B.**      **Financial Terms**

26.      Under the Agreement, Insomniac and USC split the net revenue and losses from Paradiso Festival on a 50/50 basis.  Net revenue was calculated as gross box office receipts less applicable taxes, applicable venue and/or parking costs, and artist compensation and other mutually agreed upon and reasonably necessary expenses.

27.      Although the Agreement assigned the responsibility to pay expenses for most artists and vendors to USC, Insomniac could pay mutually agreed talent and production costs upon USC's request.

28.      Insomniac and USC used the following process for funding requests:

    a.   First, USC was required to submit a request to Insomniac at least two weeks before its payment deadlines.  The request listed each artist or vendor to be funded, the total fee for each artist or vendor, the deposit or additional payment amount being requested, and the remaining balance.  USC was also required to provide documentation (known as "backup") supporting the request.  For instance, USC was required to provide a fully executed agreement for each artist.

    b.   Second, Insomniac reviewed the request and backup.  For instance, Insomniac confirmed the total fee and requested payments for each artist matched the artist's agreement with USC.

    c.   Third, Insomniac and USC discussed and resolved any concerns about the funding request.  USC might provide additional backup.  Insomniac and USC might adjust the requested amount.

    d.   Finally, Insomniac approved the funding request and sent the agreed-upon amount to USC by wire.

29.      Because Insomniac and USC shared net revenue for Paradiso Festival, and because Insomniac and USC each collected ticket sales and paid various expenses prior to the event, including advances from Insomniac to USC, the parties engaged in a careful and detailed

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

settlement process to reconcile revenue and expenses.  This settlement process depended on complete, accurate, and timely financial information from each party.  Accordingly, the Agreement imposed important accounting obligations on both Insomniac and USC.

30.     Under Section 4(b) of the Agreement, Insomniac and USC were required to settle each Paradiso Festival no later than 30 days after the event.

31.     Under Section 4(c) of the Agreement, Insomniac and USC were each required to provide the other party with the financial information necessary for settlement within 30 days.

32.     Under Section 4(d) of the Agreement, Insomniac and USC were each required to maintain full and complete books and records with respect to Paradiso Festival.  The other party had the right to inspect and examine these books and records for the purpose of settling Paradiso Festival upon five business days' written notice for up to one year following the event.

**C.      USC's Funding Requests for the 2019 Event**

33.     In early 2019, Insomniac and USC began planning the 2019 Event.

34.     As part of producing the 2019 Event, USC submitted four funding requests to Insomniac so that USC could pay certain talent and production costs before the event.  USC provided the names of the specific entities who would be paid (the "Advanced Fund Vendors") and the specific payments sought in each request.  USC also provided Insomniac with backup, such as artist agreements and invoices, to justify each request.

35.     Insomniac's accountants carefully reviewed USC's backup for each request. Between March 1, 2019 and June 7, 2019, Insomniac approved and advanced $2,062,760.46 to USC (the "Advanced Funds") in response to USC's funding requests.

**1.      First Funding Request**

36.     On February 19, 2019, Leta Whitney, USC's Finance Manager/Bookkeeper, informed Charles Liu, Insomniac's Director of Finance, by e-mail that USC was "working on getting together the first funding request for the first round of artist deposits right now" and "working on getting all of the invoices from the Artist Agencies."

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

37.     Mr. Liu replied to Ms. Whitney that the request seemed pretty early, as USC had submitted its first request in April for the previous year's event.

38.     On February 22, 2019, Ms. Whitney acknowledged the request was early, but "they are just trying to get an early announce by next Wednesday this year."  Ms. Whitney also provided a funding request spreadsheet, USC invoice, and backup by e-mail.  Mr. Liu understood Ms. Whitney to mean that USC would soon announce the artist lineup for the 2019 Event, and the requested funds covered deposits that would secure the artists' participation in the event.

39.     Ximena Salazar-Hanna, Insomniac's Senior Director of Finance/Accounting, reviewed the request and raised several concerns to Ms. Whitney, noting that USC had not provided agreements for several artists as part of its backup and that there were discrepancies between the deposits noted in the artist agreements and the deposits listed in the funding request.  In response to Ms. Salazar-Hanna's concerns, Ms. Whitney submitted an updated funding request spreadsheet, USC invoice, and backup to Insomniac by e-mail on February 27, 2019.

40.     In its first funding request, USC requested payments for artist deposits.  USC's updated first funding request included a spreadsheet that listed specific artists, the total event fee for each artist, the deposit amount being requested for each artist, and the remaining balance.  The request included funding to pay specific deposit amounts for specific artists represented by United Talent Agency ("UTA") and specific artists represented by Paradigm Talent Agency ("Paradigm").

41.     USC provided the artist agreements as backup to justify the funding request. These artist agreements listed the amounts USC agreed to pay the artist for the 2019 Event.

42.     Along with the funding request spreadsheet and backup, USC provided an invoice, which listed the total requested amount under a single line item for "Reimbursable Expense Item" for "Paradiso 2019 Artist Deposit Fees."

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

43.     After careful review of USC's materials, including checking the amounts in the spreadsheet against the amounts in the artist agreements, Insomniac approved USC's first funding request.  On March 1, 2019, Insomniac sent the first portion of the Advanced Funds to USC by wire.

### 2.     Second Funding Request

44.     On April 1, 2019, USC sent its second funding request to Insomniac, along with an invoice and backup.  USC's second request included production costs, such as marketing, in addition to artist payments.  The second request also included funding for specific payments towards the total fee for specific artists represented by UTA and Paradigm.

45.     On April 15, 2019, after careful review of USC's materials, Insomniac approved USC's second funding request and sent the second portion of the Advanced Funds to USC by wire.  Insomniac also reminded USC to send future funding requests at least two weeks in advance.

### 3.     Third and Fourth Funding Requests

46.     On May 18, 2019, Ms. Whitney sent USC's third funding request, USC invoice, and backup to Insomniac's accountants.  On May 24, Ms. Whitney sent USC's fourth funding request, USC invoice, and backup to Insomniac's accountants.

47.     USC's third and fourth requests included requests for marketing, entertainers, sound, lasers, and other production costs, in addition to artist payments.  The requested artist payments included funding for specific additional and final payment amounts to UTA artists and Paradigm artists.

48.     The USC invoices for the third and fourth funding requests listed several line items.  The invoices listed an "Activity" and a "Description" for each line item.  The "Activity" for each line item was "Advanced on Unearned Revenue."  The "Description" for each line item was one of the expense category for the 2019 Event; for instance, one line item was for "Paradiso 2019 Talent," another was for "Paradiso 2019 Safety," and a third was for "Paradiso 2019 Communications."

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

49.     On June 7, 2019, Insomniac approved USC's third and fourth funding requests and wired the remaining portion of the Advanced Funds to USC.

**D.      2019 Event and Aftermath**

50.     On June 14, 2019, the first day of the 2019 Event, Mr. Anderson informed Insomniac that USC had not used the Advanced Funds to pay the Advanced Fund Vendors. This was the first time Insomniac learned the Advanced Fund Vendors had not been fully paid.

51.     For instance, USC told Insomniac's accountants that it would use a specific portion of the Advanced Funds to pay specific artists represented by Paradigm.  USC represented to Insomniac that it needed the Advanced Funds in order to make specific payments to these specific artists before the 2019 Event, pursuant to USC's agreements with the artists.  However, USC did not pay these amounts to the Paradigm artists.  On the first day of the 2019 Event, Insomniac was forced to pay $215,055 directly to Paradigm to cover outstanding invoices that USC was supposed to pay using the Advanced Funds.

52.     In order to ensure the success of the 2019 Event, Insomniac paid almost $600,000 directly to artists and vendors to cover USC's outstanding invoices on the first day of the 2019 Event.

53.     In the months following the 2019 Event, other Advanced Fund Vendors contacted Insomniac with outstanding invoices that USC had not paid.

54.     For instance, USC told Insomniac's accountants that it would use a specific portion of the Advanced Funds to pay specific artists represented by UTA.  However, Insomniac learned that USC did not make these payments to the UTA artists.  On July 9, 2019, nearly a month after the event, Mr. Anderson sent multiple e-mails to Insomniac seeking funding to pay outstanding invoices from UTA.  On July 11, 2019, Mr. Anderson again requested funds for the outstanding invoices and told Insomniac that the Advanced Funds for UTA artists had been "allocated to other departments."  Mr. Anderson did not explain, and has never explained, what these "other departments" were.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

55.     Even though USC was responsible for managing artists under the Agreement, Mr. Anderson also told UTA that Insomniac would handle Paradiso payments, leading UTA to contact Insomniac directly about payment.  On or around July 15, 2019, Insomniac paid $638,650 directly to UTA to cover outstanding invoices for amounts that USC was supposed to have already paid using the Advanced Funds.  USC has not explained, and has never explained, what happened to the original $638,650 that Insomniac advanced USC to pay UTA artists.

56.     In addition to talent agencies, individual artists have contacted Insomniac about USC's mismanagement of the 2019 Event, stating they did not know whether they would be working with Insomniac and USC going forward.

57.     On or around September 25, 2019, EDM.com published an article entitled "Outstanding Debt:  USC Events' Penchant for Nonpayment Exposed [Exclusive]."  The article provided quotes and anecdotes from vendors, contract workers, and employees whom USC had not yet paid for the 2019 Event, even though the article was published more than three months after the event.  The article is available at https://edm.com/features/outstanding-debt-usc-events-nonpayment.

58.     Shortly after the 2019 Event, Insomniac and HOB were also contacted by vendors regarding USC's failure to pay them for other events.

59.     On or around July 10, 2019, Just Right Productions ("JRP") sent a copy of a default judgment it obtained against USC for around $29,500, supported by two unpaid invoices for stage rental equipment that JRP provided to USC for other events.

60.     Additionally, on or around July 17, 2019, LMG, LLC ("LMG") sent a copy of a default judgment it obtained against USC for around $176,000.  Insomniac asked USC about the judgment, and USC said it had nothing to do with Paradiso.  But Insomniac contacted LMG directly and learned the judgment included outstanding payments from Paradiso Festival 2017. Insomniac had advanced funds to USC to cover LMG's payments for Paradiso Festival 2017, and this was the first time Insomniac learned that USC not used those funds to pay LMG.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

**E.     USC's Financial Irregularities and Failure to Settle the 2019 Event in Accordance with the Agreement**

61.     As soon as the 2019 Event was over, Insomniac began requesting financial information from USC so the parties could settle the event.  However, despite Insomniac's repeated requests and USC's repeated assurances that it would provide this information, USC did not provide the necessary financial information to Insomniac.

62.     On June 17, 2019, two days after the 2019 Event, Insomniac asked USC for a reconciliation that would show what Insomniac funded based on USC's funding requests, and what USC actually paid out from the Advanced Funds.  Because Insomniac had been forced to pay unpaid invoices for some Advanced Fund Vendors on the first day of the event, Insomniac was concerned that there may be other Advanced Fund Vendors who were not fully paid, and that Insomniac did not know what USC had actually paid using the Advanced Funds.  USC replied that it would send the list to Insomniac.

63.     Over the next week and a half, Insomniac sent daily follow-up e-mails to USC requesting the reconciliation documents and backup for expenses paid by USC.  Despite USC's assurances that it would, for instance, send the documents "by midday tomorrow," "shortly," "by the end of the day," or "in the next couple hours," USC did not submit any documents to Insomniac until June 26.

64.     There were numerous issues with the June 26 documents provided by USC.  For instance, the documents did not show how USC used the over $600,000 in Advanced Funds that Insomniac had provided for payments to UTA artists, but that USC never paid to UTA and that Insomniac was forced to pay a second time, directly to UTA, after the 2019 Event.  USC provided quotes instead of final invoices for some vendors, and did not provide invoices at all for other vendors.  Some invoices did not include an invoice number, vendor name, or vendor information.  Some expenses were counted twice.

65.     USC also misrepresented the status of its vendor payments in the June 26 documents.  For instance, USC's reconciliation showed that the balance for a particular

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

communications vendor, who was an Advanced Fund Vendor, was paid.  However, this vendor contacted Insomniac and HOB to inform them that it had not been paid for the 2019 Event.

66.     In July and August 2019, USC sent additional invoices to Insomniac as purported backup for USC's expenses.  In other words, USC represented to Insomniac that it had paid these invoices, in order to justify the expenses that USC claimed in settling the 2019 Event.  However, some of the vendors for these invoices informed Insomniac that USC had not paid the invoices.

67.     On August 8, 2019, due to the irregularities in USC's documents and Insomniac's need to settle the 2019 Event and ensure all artists and vendors had been fully paid, Insomniac asked USC to provide an Accounts Payable register ("AP register") showing all paid and outstanding invoices for the 2019 Event.  An AP register would show all of the payments that USC had made, which would allow Insomniac's accountants to determine what USC had done with the Advanced Funds.

68.     Insomniac needed USC's AP register in order to settle the 2019 Event, and Insomniac's request was reasonable given the mysterious disappearance of the Advanced Funds.  Under the Agreement, USC was required to provide the AP register within a reasonable period of time after the 2019 Event, not to exceed 30 days.  Based on USC's obligations under the Agreement, including USC's obligation to maintain full and complete books and records, and Insomniac's right to inspect USC's books and records with five business days' written notice, USC should have been able to provide the AP register to Insomniac promptly.  Further, an AP register is a simple report that can be easily generated by USC's accounting software.

69.     USC did not respond to Insomniac's request for an AP register.  Insomniac sent a follow-up e-mail to Mr. Anderson on August 17, 2019, again requesting an AP register showing paid and outstanding invoices.  On September 4, 2019, Insomniac sent another follow-up e-mail and warned Mr. Anderson that if Insomniac did not receive payment confirmation, Insomniac would need to bill back the Advanced Funds and work with an audit team to collect and pay vendors.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

70.     On September 5, 2019, Mr. Anderson told Insomniac that USC would have an update "by tomorrow afternoon at the latest." He did not provide the promised update.

71.     Insomniac continued to learn of other Advanced Fund Vendors whom USC had not paid using the Advanced Funds. USC continued to ignore Insomniac's request to provide an AP register so Insomniac could ascertain what USC had done with the Advanced Funds and settle the 2019 Event.

72.     On September 11, 2019, almost five weeks after Insomniac's original request for an AP register, Insomniac sent USC written notice of USC's breach of its settlement and accounting obligations under the Agreement ("September 11 Letter"). In the September 11 Letter, Insomniac demanded that USC send an AP register and final invoices showing USC's payments from the Advanced Funds to cure its breach within ten days, as required by Section 7 of the Agreement. A copy of the September 11 Letter is attached as **Exhibit B** and incorporated by reference herein.

73.     Later that day, Mr. Anderson sent an e-mail to Ian Humphrey, Senior Counsel for Insomniac, acknowledging receipt of the September 11 Letter.

74.     On September 21, 2019, after USC failed to cure its breach, Insomniac sent a termination notice to USC by e-mail and overnight FedEx ("September 21 Termination Notice") pursuant to the Agreement. A copy of the September 21 Termination Notice is attached as **Exhibit C** and incorporated by reference herein. Insomniac received confirmation from FedEx that the September 21 Termination Notice was delivered to USC.

75.     Although the Agreement was terminated, Insomniac continued to hold discussions and seek financial documents from USC for the limited purpose of settling expenses and revenues for the 2019 Event.

76.     On September 22, 2019, after the period for cure had expired and Insomniac had terminated the Agreement, Mr. Anderson submitted a QuickBooks report that purported to address Insomniac's request for an AP register. However, there were numerous issues with the QuickBooks report. For instance, the QuickBooks report showed significantly higher expenses

COMPLAINT  (CASE NO. 2:20-cv-00137) - 14
4829-3781-6752v.19 0107297-000007

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

than the backup provided by USC, so Insomniac could not reconcile USC's expenses. Although the QuickBooks report showed that USC had written certain checks, the QuickBooks report did not show which checks had cleared, and it was unclear whether vendors actually received the funds.  Insomniac was particularly concerned about the status of these alleged payments because Insomniac continued to receive e-mails and outstanding invoices from vendors who were listed as "paid" on USC's spreadsheets.  Further, the QuickBooks report contained annotations suggesting the report was edited after it was pulled from USC's accounting software.

77.     On October 28, Mr. Anderson spoke with Meelo Solis, Insomniac's VP of Festivals and Concerts.  Mr. Solis told Mr. Anderson the Agreement was terminated, but Mr. Anderson claimed he did not receive the September 21 Termination Notice and threatened to sue Insomniac.  Mr. Anderson offered to provide bank statements and wire receipts to settle the 2019 Event.

78.     On October 29, Mr. Humphrey e-mailed Mr. Anderson and asked him to send the bank statements and wire receipts as soon as possible.

79.     Between October 30 and November 10, 2019, Insomniac sent numerous follow-ups by text message and e-mail to Mr. Anderson, requesting that USC send the bank statements and wire receipts to Insomniac.  Despite Mr. Anderson's offer to provide these documents and his repeated assurances that USC would, for instance, send the documents "by tomorrow at the latest," "over the weekend," "by end of day," "finishing up now," or "tomorrow," USC still did not send the bank statements and wire receipts showing USC had paid its vendors.

**F.     2019 Event Settlement and USC's Continued Failure to Pay Vendors**

80.     Although USC did eventually send some documents months after Insomniac had terminated the Agreement, Insomniac never received all of the necessary financial information for a complete and accurate settlement of the 2019 Event.  However, in the interests of closing the books for the event and ensuring all of the artists and vendors were paid, Insomniac

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

negotiated a settlement with USC that was executed on December 20, 2019 (the "2019 Event Settlement").  Insomniac never learned what happened to the Advanced Funds.

81.     As part of the 2019 Event Settlement, USC agreed to pay all unpaid vendors from Paradiso 2019 (the "Unpaid Vendors") in full and submit payment confirmation to Insomniac (the "Vendor Payment Confirmations") by no later than January 18, 2020.  USC owed around $200,000 to the Unpaid Vendors.

82.     The parties agreed that a certain amount would be deducted from USC's share of the revenue to pay the JPR and LMG judgments and to offset an amount USC owed to HOB from the settlement of another event.  Insomniac paid HOB, JPR and LMG and provided payment confirmation to USC.

83.     After applying deductions and discounts, Insomniac and USC agreed on the final amount that USC would receive from the 2019 Event proceeds.

84.     Ms. Salazar-Hanna negotiated the settlement for Insomniac.  After the 2019 Event Settlement was executed, Ms. Salazar-Hanna asked Mr. Anderson when USC would start sending Vendor Payment Confirmations.  On December 20, 2019, Mr. Anderson told Ms. Salazar-Hanna by e-mail, "If you send the wire through immediately, I'll start on the payments today and will send you confirmation as we go."

85.     Insomniac sent the settlement amount to USC by wire on December 20, which USC received on December 24 due to holiday schedules.

86.     Despite Mr. Anderson's promise to "send you confirmation as we go," Mr. Anderson and USC did not send any Vendor Payment Confirmations to Insomniac.

87.     On January 6, 2020, Ms. Salazar-Hanna asked Mr. Anderson for a status update on payments to the Unpaid Vendors, as Insomniac had expected to receive Vendor Payment Confirmations after USC received the settlement.  Mr. Anderson replied to Ms. Salazar-Hanna by e-mail that "I have started to make payments and will get more done this week," but he did not provide any payment confirmation to support these alleged payments.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

88.     On January 7, 2020, Alyxzander Bear, Insomniac's Executive Director of Production, asked Mr. Anderson to make certain that a particular vendor, one of the Unpaid Vendors, was paid as soon as possible, as Mr. Bear had told the vendor that USC would be paying it at the first of the year.  Mr. Anderson replied to Mr. Bear by e-mail that "I am in contact and payment will go out this afternoon."

89.     Despite Mr. Anderson's representation that USC would pay the vendor on January 7, and USC's requirement under the 2019 Event Settlement to pay all Unpaid Vendors and send Vendor Payment Confirmations to Insomniac by January 18, 2020, this vendor has still not been paid.

90.     On January 9, 2020, a security vendor told Insomniac that USC still hadn't paid his team for the 2019 Event, and that Mr. Anderson had been telling him "tomorrow" for the past 5 months.  The vendor also said that Mr. Anderson claimed he hadn't received settlement from Insomniac yet.  On January 15, the vendor told Insomniac that Mr. Anderson "stopped responding to calls/emails/texts."  The security vendor and his team have still not been paid.

91.     Although the January 18, 2020 deadline has passed, USC has not submitted Vendor Payment Confirmations to Insomniac.  Unpaid Vendors have informed Insomniac that USC has still not fully paid them, despite USC's obligation to do so before January 18.

**G.     USC's Promotion of Paradiso Festival 2020**

92.     On information and belief, USC maintains a Facebook page at the URL https://www.facebook.com/USCSEATTLE/.

93.     On January 15, 2020, USC posted a "teaser" video for Paradiso Festival on USC's Facebook page.

94.     On January 17, 2020, USC posted a photo from Paradiso Festival on USC's Facebook page with the comment, "Who do YOU want to see Paradiso Festival?  Tag the artists below!"

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

95.     On January 21, 2020, USC posted another photo from Paradiso Festival on USC's Facebook page with the message, "Question:  Who should play the sunset time slot at Paradiso Festival?"

96.     Despite Insomniac's clear termination, USC's social media posts have generated excitement in the electronic dance music community that Paradiso Festival will be held in 2020.

97.     On information and belief, USC has started promoting and booking talent for Paradiso Festival 2020 even though the Agreement was terminated and there is no longer a Paradiso Festival event.

## V.     CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**(Declaratory Judgment – Termination of Agreement)**

98.     Insomniac incorporates by reference the allegations in paragraphs 1–97 as though fully set forth herein.

99.     USC failed to provide necessary financial information to settle 2019 Event, as required by Sections 4(b) and 4(c) of the Agreement.  USC's failure to provide this information was a material breach of the Agreement.

100.    Insomniac provided written notice to USC of its material breach on September 11, 2019.  USC failed to cure the breach within 10 days following this notice, as required by Section 7 of the Agreement.

101.    On September 21, 2019, Insomniac provided written notice of termination to USC, thereby terminating the Agreement.

102.    On October 28, 2019, Mr. Anderson spoke with Mr. Solis.  Mr. Anderson disagreed that the Agreement was terminated and threatened to sue Insomniac.

103.    On January 15, 2020, USC posted a "teaser" video for Paradiso Festival on USC's Facebook page.  Since then, USC has posted at least two photographs from Paradiso Festival on USC's Facebook page with comments inviting electronic music dance fans to name

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

the artists they wish to see at Paradiso Festival.  USC's actions show that USC believes the Agreement is still valid despite Insomniac's termination.

104.     There is an actual controversy between Insomniac and USC with respect to the status of the Agreement.

105.     Under Section 9 of the Agreement, Insomniac may not promote or book any other multi-stage electronic dance music concert event at the Gorge Amphitheatre so long as the Agreement remains in effect.  Insomniac wishes to promote an electronic dance music event at the Gorge Amphitheatre this summer without USC's involvement, and seeks judicial confirmation that Insomniac is no longer bound by the non-compete obligation because the Agreement has been terminated.

106.     Insomniac seeks a declaratory judgment that the Agreement was terminated on September 21, 2019.

**SECOND CLAIM FOR RELIEF**

**(Declaratory Judgment – Non-Renewal)**

107.     Insomniac incorporates by reference the allegations in paragraphs 1–97 as though fully set forth herein.

108.     Section 9 of the Agreement states:  "For so long as the Event is profitable to both parties based on the financial terms and distribution of revenues under Section 3 and 4, above, this Agreement shall automatically renew on annual basis with the Event being scheduled at the Venue for the last full weekend in June, or other time in the Gorge Season as both parties mutually agree, unless the parties mutually agree otherwise."

109.     Insomniac terminated the parties' relationship, however, to the extent it is found not to have terminated, a declaratory judgment should be entered that the Agreement is no longer in effect because the Agreement has not been renewed.

110.     Alternatively, a declaratory judgment should be entered that Insomniac is excused from any obligation to renew the Agreement.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

111.     Due to the circumstances surrounding the 2019 Event, including but not limited to USC's material breach of the Agreement; USC's misrepresentations to Insomniac about how the Advanced Funds would be used; USC's misrepresentations to Insomniac about how the Advanced Funds were used; USC's failure to pay its artists and vendors, including the Advanced Fund Vendors; USC's failure to provide financial documents and backup showing how the Advanced Funds were actually used; USC's failure to provide financial documents and backup showing that all USC artists and vendors were fully paid for the 2019 Event; USC's breach of its duty of good faith and fair dealing to Insomniac; USC's actions damaging the Paradiso Festival brand; USC's actions damaging Insomniac's business relationships and reputation, including causing artists to no longer wish to work with Insomniac; and USC's general poor behavior towards Insomniac, Insomniac's purpose for entering the Agreement has been frustrated, and Insomniac refuses to renew the Agreement.

112.     Mr. Anderson has indicated he wishes to renew the Agreement and continue producing Paradiso Festival.

113.     There is an actual controversy between Insomniac and USC with respect to whether the Agreement has been renewed.

114.     Insomniac seeks a declaratory judgment that the Agreement has not been renewed and is no longer in effect.

## THIRD CLAIM FOR RELIEF

### (Breach of Contract – Injunctive Relief)

115.     Insomniac incorporates by reference the allegations in paragraphs 1–97 as though fully set forth herein.

116.     Insomniac and USC were parties to the Agreement, a fully executed contract.

117.     The Agreement provides a cross-license provision.  Under Section 2(d) of the Agreement, "To the extent necessary for promoting the Event, each party hereby grants to the other a limited, non-assignable license to use the trademarks, service marks, logos and other brand names of the other strictly in conjunction with the Event and in accordance with such use

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

standards and guidelines provided by the owning party.  'Paradiso Festival' is a registered trademark jointly owned by [Insomniac] and USC Events.  The parties grant one another a cross-license to use the 'Paradiso Festival' trademark along with the branding and concept for the Event, including all other trademarks, service marks, copyrights, trade dress and other rights related specifically and exclusively to the production and promotion of the Event (collectively the 'Event Branding') and neither party shall, directly or indirectly use the Event Branding in conjunction with any other event without the advance written consent of the other party."

118.    Under Section 10(g) of the Agreement, the cross-license provision survives termination of the Agreement.

119.    Under Sections 1 and 9 of the Agreement, Paradiso Festival was a weekend event held in June at the Gorge Amphitheatre.

120.    USC has started promoting Paradiso Festival 2020 on its social media accounts.

121.    The Agreement has been terminated.  HOB, Insomniac's parent company, is the venue operator for the Gorge Amphitheatre, and there is currently no venue agreement to operate Paradiso Festival at the Gorge Amphitheater.

122.    Insomniac has not given written consent for USC to use the Paradiso Festival trademark and branding in conjunction with any other event.

123.    On information and belief, USC has or will soon begin other promotion activities for Paradiso Festival 2020, including booking artists for Paradiso Festival 2020 and offering presale tickets for Paradiso Festival 2020.

124.    Due to Insomniac's longtime association with Paradiso Festival, USC's conduct in promoting Paradiso Festival 2020 will reflect on Insomniac and affect Insomniac's business relationships with the artists and vendors who support Paradiso Festival, even though the Agreement was terminated and Insomniac is no longer co-producing Paradiso Festival with USC.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

125.     If USC is permitted to promote Paradiso Festival 2020, disappointed electronic music fans may wrongly blame Insomniac when the event does not take place due to Insomniac's longtime association with Paradiso Festival.  These consumers may also be harmed by USC's actions, such as by purchasing air tickets or making other travel arrangements to attend a non-existent event.

126.     Due to USC's reputation for failure to pay, USC may wrongly represent to artists and vendors that Insomniac is still co-producing Paradiso Festival with USC in order to trade on Insomniac's good will.

127.     As a direct and proximate result of USC's conduct, Insomniac will suffer severe, immediate, and irreparable injury to its business, goodwill, and reputation.  Unless such acts are restrained by this Court, they will be continued, and Insomniac will continue to suffer great and irreparable injury.

128.     Insomniac has no adequate remedy at law.

129.     Insomniac is entitled to an injunction against USC in order to stop USC from promoting Paradiso Festival 2020, using the Paradiso Festival social media accounts, and booking artists and vendors for Paradiso Festival 2020.

## FOURTH CLAIM FOR RELIEF

### (Breach of Contract – Damages)

130.     Insomniac incorporates by reference the allegations in paragraphs 1–97 as though fully set forth herein.

131.     Under the 2019 Event Settlement, USC was required to pay the Unpaid Vendors before January 18, 2020 and send Vendor Payment Confirmations to Insomniac.

132.     On information and belief, USC has not fully paid the Unpaid Vendors.

133.     USC breached its obligations to Insomniac by failing to pay the Unpaid Vendors and by failing to submit Vendor Payment Confirmations to Insomniac.

134.     Due to USC's breach, multiple Unpaid Vendors have contacted Insomniac to seek payment for the 2019 Event.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

135.     If USC does not pay the Unpaid Vendors and submit Vendor Payment Confirmations to Insomniac, Insomniac will incur the costs of working with an audit team to systematically contact, reconcile, and pay the Unpaid Vendors for the 2019 Event.  These costs are necessary to protect USC's business relationships and reputation, as many of the Unpaid Vendors often support Insomniac's other music events.

136.     Mr. Anderson is the alter ego of USC, and vice versa, such that USC and Mr. Anderson are to be treated as one and the same.  Mr. Anderson is personally liable for USC's acts and omissions, including his own acts and omissions on behalf of USC, and through which he obtained personal benefit.

137.     Defendants are liable to Insomniac for breach of contract in an amount to be proven at trial.

## FIFTH CLAIM FOR RELIEF

### (Breach of Duty of Good Faith and Fair Dealing)

138.     Insomniac incorporates by reference the allegations in paragraphs 1–97 as though fully set forth herein.

139.     On February 19, 2019, USC told Insomniac that it was putting together a funding request "for the first round of artist deposits."  Insomniac was concerned that the request seemed early, as USC had submitted its first funding request in April for the previous year's Paradiso Festival.  On February 22, 2019, USC sent an e-mail to Insomniac acknowledging the request was early, but explained USC was "trying to get an early announce by next Wednesday this year."

140.     Insomniac understood from USC's statements that USC planned to announce the artist lineup for the 2019 Event earlier than the previous year, and that USC needed an advance from Insomniac so that USC could pay deposits to secure the artists' participation in the 2019 Event.

141.     On February 27, 2019, USC submitted its first funding request to Insomniac.  The request listed specific artists, the total event fee for each artist, the deposit amount being

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

requested for each artist, and the remaining balance.  USC also provided backup in the form of fully executed agreements for the artists, as well as an invoice from USC with a line item for "Paradiso 2019 Artist Deposit Fees."

142.    USC submitted three additional funding requests to Insomniac on April 1, May 18, and May 24, 2019.  Each funding request listed specific artists and vendors for the 2019 Event, the total event fee for each artist and vendor, the deposit or payment amount being requested for each artist and vendor, and the remaining balance.  USC provided backup with each funding request, along with invoices from USC showing line items for "Advanced on Unearned Revenue" for Paradiso 2019.

143.    USC represented that it would use the funds received from the four funding requests as an advance on unearned revenue or as reimbursement for the purpose of making specific payments, including first round artist deposits, to specific artists and vendors for the 2019 Event.

144.    By characterizing the funding requests as "Advanced on Unearned Revenue," USC represented that it needed the funds in order to make necessary payments to the Advanced Fund Vendors before the 2019 Event.  Otherwise, there would be no need for USC to receive Advanced Funds before the 2019 Event.  USC could pay its artists and vendors using cash flow from its standard operations or USC's share of the net revenue after the 2019 Event was settled.

145.    Insomniac carefully reviewed each funding request before approving and sending the Advanced Funds to USC.  In total, Insomniac advanced over $2 million to USC in reliance on the information and materials that USC provided with its four funding requests.

146.    USC's representations were false.  USC had no intention of using—and did not use—the Advanced Funds to make the payments to the Advanced Fund Vendors that it listed in its four funding requests.  USC lied to Insomniac so that Insomniac would send the Advanced Funds to USC.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

147.     Insomniac did not know USC's representations were false.  Insomniac discovered the representations were false after Insomniac was forced to pay outstanding invoices to Advanced Fund Vendors on the first day of the 2019 Event.

148.     For instance, USC said it would use a specific portion of the Advanced Funds to pay specific artists represented by Paradigm.  This amount was supposed to cover all deposits and event fees for the Paradigm artists, and Insomniac carefully reviewed the fully executed artist contracts to reconcile these numbers with USC's funding requests before sending the Advanced Funds.  However, on the first day of the 2019 Event, Insomniac learned there was an outstanding balance of $215,055 owed to Paradigm artists.  Insomniac was forced to pay the balance directly to Paradigm in order to ensure the success of the 2019 Event.  USC never reimbursed Insomniac for the $215,055 amount that Insomniac had to pay twice (once to USC through the Advanced Funds; once to Paradigm on the day of the event), and USC never explained what happened to the money.

149.     USC also told Insomniac it would use a specific portion of the Advanced Funds to pay specific artists represented by UTA.  This amount was supposed to cover all deposits and event fees for the UTA artists, and Insomniac carefully reviewed the fully executed artist contracts to reconcile these numbers with USC's funding requests before sending the Advanced Funds.

150.     One month after the event, Insomniac learned that USC still had an outstanding balance of $638,650 to UTA artists for the 2019 Event.  Insomniac learned this because UTA sought the unpaid balance from USC after the event, and Mr. Anderson asked Insomniac for funds to pay this amount, even though Insomniac had already given USC all the funding it needed to pay the UTA artists through the Advanced Funds.  On July 11, 2019, Mr. Anderson admitted that he and USC had lied in its funding requests, as the Advanced Funds that Insomniac gave USC to pay for UTA artists had been "allocated to other departments."

151.     On or around July 15, 2019, Insomniac was forced to pay $638,650 directly to UTA to cover USC's outstanding invoices the 2019 Event.  Based on the amounts in USC's

COMPLAINT  (CASE NO. 2:20-cv-00137) - 25
4829-3781-6752v.19 0107297-000007

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

funding requests, this meant USC could not have fully paid even the first round artist deposits for UTA.  USC never reimbursed Insomniac for the $638,650 amount that Insomniac had to pay twice (once to USC through the Advanced Funds; once directly to UTA after the 2019 Event), and USC never explained what happened to the money.

152.     Under the Agreement, USC was responsible for artist relations and talent management, as well as managing many of the vendors for the 2019 Event.  USC was responsible for paying these artists and vendors, whether through USC's own funds or by using the Advanced Funds that Insomniac provided to USC for the sole purposes of paying the Advanced Fund Vendors.

153.     Artists and vendors, including the Advanced Fund Vendors, contacted Insomniac about USC's failure to pay them for the 2019 Event and other events.  Because of USC's actions, artists have told Insomniac they do not know whether they will work with Insomniac and USC for future events.

154.     Under the 2019 Event Settlement, USC agreed to pay the Unpaid Vendors in full and submit payment confirmation to Insomniac by January 18, 2020.

155.     Although that date has passed, Unpaid Vendors have informed Insomniac that they have still not been paid in full by USC.  USC has not submitted the payment confirmation.  On information and belief, USC has not fully paid the Unpaid Vendors despite its requirement to do so under the 2019 Event Settlement.

156.     Under Washington law, a duty of good faith and fair dealing is implied in every contract.  This duty requires the parties to a contract to cooperate with each other so that each may obtain the full benefit of performance.

157.     Insomniac and USC are co-owners of the Paradiso Festival trademark.

158.     By failing to pay its artists and vendors for all of their hard work in supporting the 2019 Event, USC has harmed the Paradiso Festival brand.  Further, artists and vendors no longer trust the promoters of Paradiso Festival to meet their payment obligations.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

159.     Mr. Anderson is the alter ego of USC, and vice versa, such that USC and Mr. Anderson are to be treated as one and the same.  Mr. Anderson is personally liable for USC's acts and omissions, including his own acts and omissions on behalf of USC, and through which he obtained personal benefit.

160.     Defendants are liable to Insomniac for breach in an amount to be proven at trial.

## VI.     PRAYER FOR RELIEF

WHEREFORE, Insomniac respectfully prays for the following relief:

A.     A declaration that the Agreement was terminated or, in the alternative, that the Agreement has not been renewed and is no longer in effect;

B.     A preliminary and permanent injunction, enjoining and restraining USC from using the Paradiso Festival social media accounts, booking artists for Paradiso Festival, and other activities promoting a Paradiso Festival event in 2020;

C.     An award of monetary damages and/or compensatory damages against Defendants (jointly and severally) in an amount to be proven at trial;

D.     Costs and reasonable attorneys' fees;

E.     The right to conform the pleadings to the proof and evidence presented at trial;

F.     Such other relief as the Court deems just and equitable.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1    DATED this 28th day of January, 2020.

2                                             Davis Wright Tremaine LLP
                                              Attorneys for Insomniac
3

4                                             By _s/ Jaime Drozd Allen_____
                                                 Jaime Drozd Allen, WSBA #35742
5
                                                 _s/ Jennifer K. Chung_____
6                                                Jennifer K. Chung, WSBA #51583

7                                                920 Fifth Avenue, Suite 3300
                                                 Seattle, WA  98104-1610
8                                                Telephone: (206) 757-8039
                                                 Fax: (206) 757-7039
9                                                E-mail: jaimeallen@dwt.com
                                                 Email:  jenniferchung@dwt.com
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

COMPLAINT  (CASE NO. 2:20-cv-00137) - 28
4829-3781-6752v.19 0107297-000007

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax